## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| FRANK FISCHER, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:05-CV-00763 |
| | ) |
| SYSCO FOOD SERVICES OF | ) |
| CENTRAL ALABAMA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff's employment as a shuttle driver with the Defendant, Sysco Food Services of Central Alabama, Inc. (hereinafter "Sysco") was terminated on July 23, 2004 following the investigation of Plaintiff's involvement in an accident on June 29, 2004. The accident occurred when Plaintiff apparently fell asleep and drove his truck through an intersection, crashing into a ditch and endangering the safety of himself and others. Sysco's Accident Review Committee classified Plaintiff's accident as "major." In every incident where an accident has been classified as major, the Sysco driver causing the accident has been terminated.

{B0669254}

Sysco is entitled to summary judgment on Plaintiff's age discrimination claim because (1) Plaintiff's claim is time barred, (2) Plaintiff failed to exhaust his administrative remedies with the EEOC, (3) Plaintiff cannot establish a prima facie case of age discrimination, and (4) Plaintiff cannot raise a genuine issue of fact as to whether Sysco's proffered reason for its termination decision was a pretext for age discrimination.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    About Sysco

Sysco is a food service distributor headquartered in Calera, Alabama.  Sysco supplies products to restaurants, schools, hotels, healthcare institutions, and other food service customers.  To assist in the delivery process, Sysco employs shuttle drivers to transport its delivery trailers between two different warehouses.  (Pl. Dep. 23).

### B.    Plaintiff

The Plaintiff, Frank E. Fischer, who is 53 years old, worked as a shuttle driver for Sysco transporting trailers between Panama City, Florida and Calera, Alabama.  Plaintiff would start his route between 5:00 p.m. and 7:00 p.m. and generally take 9-1/2 to 10 hours to complete it.  (Pl. Dep. 46).  Prior to his accident

{B0669254}

on June 29, 2004, Plaintiff had driven the Panama City to Calera route for over four years and approximately 4 times a week. (Pl. Dep. 181).

### C.    Plaintiff's Accident

On June 29, 2004, Plaintiff failed to stop at the intersection of Highway 231 and Highway 271 in Montgomery County and drove his tractor trailer, with two loaded trailers, through the dead end and into a ditch, causing injury to himself and substantial property damage. After the accident, Plaintiff called his immediate supervisor, John Morris, to inform Morris of the accident.

Morris completed a Supervisor Incident Report recounting the conversation he had with Plaintiff. That reports provides in pertinent part: "Between the hours of 12:30 and 1:30 a.m. on 29 June 2004 I received a cell phone call from Frank Fischer stating: I've had an accident. I asked how bad and are you ok? Frank stated: Major accident. … I asked where are you and what happened. Frank stated he was southbound on Highway 271 and ran off the road at the intersection of Highway 271 and Highway 231. I asked how did that happen? Frank stated: "Ah, I don't know. Maybe I fell asleep." (Harpst Affidavit, Exhibit G). The police officer conducting the investigation of the accident concluded that the accident was caused when the driver of the vehicle fell asleep. (Harpst Affidavit,

{B0669254}

Exhibit C at 2). Plaintiff testified in his deposition that he does not remember whether he fell sleep or not. (Pl. Dep. 64).

After the accident, Plaintiff filled out three different written reports about the incident. Plaintiff submitted a Driver's Report of Accident report where he stated "came to intersection sooner than expected – hit brakes and went into ditch." (Harpst Affidavit, Exhibit D). Plaintiff filed an accident accountability statement where he stated "came to intersection sooner than expected and couldn't stop." (Harpst Affidavit, Exhibit F). Plaintiff gave a handwritten statement which provides "on Monday the 28th of June around 2:00 a.m. I was heading back to Panama City yard with two full trailers – went south on 65 and turned off at 85 exit going towards Atlanta – turned off at exit number 9 which is Highway 271 and headed east towards 231 – didn't realize I was close to 231 and 271 intersection and had to stop – slid through intersection and went into ditch." (Harpst Affidavit, Exhibit E).

Sysco's Transportation Manager, Danny Harpst, with others, investigated the accident. (Harpst Affidavit at ¶ 5). That investigation determined that no factors other than inattention, as admitted by the Plaintiff, could have contributed to the accident. Id. The information gathered in the investigation was provided to Sysco's Accident Review Committee. Id.

4

{B0669254}

The Accident Review Committee is comprised of Sysco drivers who have had no more than one minor accident within the last revolving year. (Harpst Affidavit at ¶ 4) The Committee reviews all accidents for the purpose of determining how the accident should be classified. (Harpst Affidavit, Exhibit B at 2). The accident classifications are minor, serious and major. Id. Disciplinary actions according to the level of the accident are provided in the accident review policy. In situations where an accident is classified as major, the Accident Review Committee turns the information over to Sysco's management to make a decision on the disciplinary action to be taken against the individual. Id. The disciplinary action for all major accidents at Sysco has been termination. (Wheat Affidavit at ¶ 3, Morris Dep. 30).

The Accident Review Committee met on July 13, 2004 to review a number of accidents, including Plaintiff's. The report of the Accident Review Committee states "[Plaintiff] stated that he was heading back to Panama City with two loaded trailers when he came up on the intersection sooner than expected. He hit his brakes and went into the ditch. [It is the conclusion of the Committee] that the driver was careless and not paying attention. [… Decision—Major [accident]. Turned over to management per policy for decision.] (Wheat Affidavit, Exhibit A at 7).

5

{B0669254}

**D.**    <u>**Plaintiff's Termination**</u>

After the Accident Review Committee determined that Plaintiff's accident was major, Danny Harpst, the Transportation Manager, Eddie O'Connor, the Vice President of Operations, and Smokey Parker, the Director of Transportation, met to determine the appropriate discipline. (Harpst Affidavit at ¶ 3). Harpst, O'Connor, and Parker agreed that termination was appropriate. <u>Id.</u> Harpst informed Morris of the decision and told him to call Plaintiff in for a meeting. (Morris Dep. 43).

On July 23, 2004, Harpst and Morris met with Plaintiff to tell him of the termination decision. At the termination meeting, Harpst gave the Plaintiff a sheet of paper to read and sign. (Pl. Dep. 166-68). Plaintiff did not like what the paper said and he refused to sign it, but Harpst told him he was terminated nonetheless. <u>Id</u>. Plaintiff was told that the reason for termination was for reckless driving. The termination memo Harpst gave to Plaintiff stated in pertinent part: "Frank, your actions on June 29 disregarded company policies and rules, as well as safety for yourself and the public. By your own admission, this was an act of not paying attention. …Due to your actions, your employment with Sysco Food Services of Central Alabama is terminated effective today." (Harpst Affidavit, Exhibit A).

Morris was not involved in the decision to terminate Fischer, but was told on the day Fischer was terminated that he would be fired. (Morris Dep. 43). Morris

{B0669254}

was a little upset that Fischer would be fired because it was during the peak season and he was losing a shuttle driver. No one asked Morris' opinion on the firing. (Morris Dep. 45-46). Morris wanted to keep the Plaintiff on as an employee. (Morris Dep. 74).

### E.    Plaintiff's Appeal of His Termination

Sysco allows a terminated employee to appeal a decision of termination. (Wheat Affidavit at ¶ 5). The purpose of the appeals hearing is for the employee to bring to the attention of the appeals panel any new information not known at the time of termination that would justify the employee being rehired. Id. at ¶ 6. Plaintiff exercised his right to appeal and was represented by counsel during the appeals process. Id. Plaintiff's appeals panel was comprised of Lynda Wheat, Danny Ralph and Chris O'Keefe. Id. at ¶ 7. During the appeals hearing, Plaintiff and his attorney, Mr. Cliff Higby, stated their disagreement with the decision to terminate, but did not provide any new information that would justify Plaintiff being rehired.

The Appeals Panel unanimously decided not to reinstate Plaintiff after his hearing. (Wheat Affidavit at ¶ 8). Wheat voted not to overturn the termination decision because Plaintiff told his immediate supervisor that he must have fallen asleep, the accident report of the investigating officer indicated that Mr. Fischer

went to sleep, the accident caused major property damage and placed the company at a huge liability risk, and the termination decision was consistent with previous major accidents.  (Wheat Affidavit, Exhibit D).  Ralph voted not to overturn the termination decision because the Plaintiff did not exercise proper care and did not follow safe driving procedures resulting in an accident with significant property damage and personal injury to himself.  Ralph stated in his memorandum denying Fischer's appeal, "I find that his termination is justified in the interest of his and the safety of the general public and must deny his appeal."  (Wheat Affidavit, Exhibit E).  O'Keefe said in his memorandum denying Plaintiff's reinstatement, "Based on the facts presented, I must agree with the Accident Review Committee that Mr. Fischer's driving was 'careless' and the incident was 'major'…according to the vehicle's Tripmaster, the vehicle went from 56 to 0 miles per hour in less than 5 seconds, causing injury to Mr. Fischer as well as extensive damage to the vehicle.  We cannot take the risk of this happening again.  Therefore, I must vote to deny Mr. Fischer's appeal to overturn his termination."  (Wheat Affidavit, Exhibit F).

### F.     Worker's Compensation

Plaintiff injured his left shoulder during the accident.  The day after the accident, Plaintiff selected a doctor from Sysco's workers compensation list and

8

went in to have his shoulder examined. (Pl. Dep. 82-83). Plaintiff's doctor at the Bay Medical Clinic in Panama City, Florida informed him that muscles were torn off the bone in his shoulder and that he would need to have surgery. (Pl. Dep. 82, 84). Plaintiff informed Morris of his need to have surgery and underwent a shoulder operation the first week of July 2004. (Pl. Dep. 87, 89). Plaintiff's injury was reported as a Florida worker's compensation claim and he received benefits for an uncertain period in the amount of $600 per week. (Pl. Dep. 88). Plaintiff did not file a workers compensation claim in the State of Alabama. (Pl. Dep. 87, 119). Plaintiff does not remember any supervisor indicating that the company had a problem with employees that were injured at work. (Pl. Dep. 225).

### G.    Sysco's Policy Prohibiting Age Discrimination

Sysco has a workplace anti-discrimination policy that prohibits all forms of discrimination. (Pl. Dep., Exhibit #11 -- Employee Handbook at 15). Plaintiff was issued and acknowledged receipt of Sysco's Employee Handbook. Employees who experience workplace discrimination, including age, are instructed to report the alleged act immediately to the Human Resources Department or the Ethics Hotline. Id. Plaintiff never complained of age discrimination during his employment.

9

**H.**    **Plaintiff's Age Claim**

Plaintiff claims that he had one conversation with his former supervisor, Dee Dunigan, where she told him that he should look into early retirement.  (Pl. Dep. 140).  Dunigan told Plaintiff that the company had good retirement benefits and that he should investigate it because he had enough time with the company that he could retire.  (Pl. Dep. 144).  Plaintiff did not remember when he had the conversation with Dunigan and no one else was present.  (Pl. Dep. 145, 147).  Dunigan was not Plaintiff's supervisor at the time of his termination, having been replaced by Morris in July 2003.  (Pl. Dep. 145, Morris Dep. 13).  Plaintiff told Dunigan that he could not retire at the time and that he needed to keep working.  (Pl. Dep. 150).  Plaintiff, testifying at his appeals hearing about his conversation with Dunigan, stated:  "I don't have a complaint about it.  I just said no thank you.  I've got another 15 years to go.  (Wheat Affidavit, Exhibit C at 18).

Plaintiff says that he engaged in small talk with Eddie O'Connor and Smokey Parker about retirement.  Parker and O'Connor would engage Plaintiff in conversations about how long he had been with the company.  (Pl. Dep. 155-56).  Plaintiff does not remember O'Connor or Parker using the word "retire" with him.  (Pl. Dep. 156, 159-60).  Plaintiff says the conversations with O'Connor and Parker happened before a safety meeting.  (Pl. Dep. 157-58).  The conversations were

10

small talk or raised in a joking fashion. (Pl. Dep. 155-56). Plaintiff did not complain to anyone about the statements made by O'Connor or Parker and was not offended by them. (Pl. Dep. 159).

Plaintiff also met with Lynda Wheat to discuss company benefits. Plaintiff found the meeting with Wheat to be helpful and he was not offended by what Wheat had to say and did not complain. (Pl. Dep. 160-62). During Plaintiff's employment with Sysco, no supervisor ever said anything derogatory about a person's age. (Pl. Dep. 163). Plaintiff does not know of anyone at Sysco who has a problem with individuals based on age. (Pl. Dep. 163).

Plaintiff also contends that he was discriminated against based on his age because Sysco changed the method for scheduling vacation. Plaintiff was no longer allowed to schedule all of his vacation prior to anyone else being allowed to schedule a vacation. (Pl. Dep. 186-187). Plaintiff was first allowed to schedule his vacation time for a one-week period, and then the vacation schedule went to the next senior person below the Plaintiff and followed that method until everyone had signed up for one week of vacation and then the Plaintiff was allowed to schedule his second week of vacation in the same seniority format. Prior to Morris becoming Plaintiff's supervisor, Plaintiff was allowed to schedule all four weeks of his vacation before other drivers were given an opportunity to do so. Morris

11

informed Plaintiff that the new format was necessary because he thought it was more fair to his co-workers.  (Pl. Dep. 186-87).

Morris had never talked to Plaintiff about retiring from Sysco.  Morris was not in favor of Plaintiff retiring because he found it difficult to hire shuttle drivers who would be willing to work at night.  (Morris Dep. 26-27).

## I.     Plaintiff's EEOC Filing

Plaintiff filed an age discrimination charge with the EEOC in January 2005. (Wheat Affidavit, Exhibit G).  Subsequent to his filing, the EEOC wrote Plaintiff requesting additional information regarding his charge.    Plaintiff never provided the requested information to the EEOC.  On March 29, 2005, the EEOC closed Plaintiff's file and issued his right to sue letter.  (Wheat Affidavit, Exhibit H).  The EEOC dismissal letter stated that it was closing the file for the following reason: "Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was possible to resolve your charge."  Id.  Sysco was never provided an opportunity to respond to Plaintiff's EEOC charge through submitting a position statement.  (Wheat Affidavit at ¶ 9).

Plaintiff filed this suit on June 29, 2005, more than 90 days after the EEOC issued the right to sue letter.

{B0669254}

## III.    MEMORANDUM OF LAW

### Summary Judgment Is Properly Granted When There Is No Genuine Issue Of Material Fact And The Moving Party Is Entitled To Judgment As A Matter of Law

Summary judgment becomes appropriate where it is established through pleadings, affidavits, depositions, and other discovery documents that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986).  Indeed, the Supreme Court has indicated that trial judges have an "affirmative obligation" to use summary judgment when appropriate. Celotex v. Catrett, 477 U.S. 317, 327 (1986).  Here, the information disclosed during the discovery process indicates no genuine issue of material fact as to plaintiff's age discrimination claims.

The moving party bears the burden to show the Court that no material factual issues exist for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  When the moving party has carried its burden, the nonmoving party must come forward with evidence that shows more than some "metaphysical doubt" that genuine and material factual issues exist. Id. at 586.  A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment.  See Anderson, 477 U.S. at 252. Rather, the nonmoving party must convince the Court that, based on the record

{B0669254}

taken as a whole, a rational trier of fact could find for the nonmoving party. <u>See</u> <u>id</u>. at 248-49. The record in this case shows no significant discrepancy in any of the deposition testimony so as to preclude summary judgment.

In employment discrimination cases, summary judgment becomes appropriate where "the plaintiff fails to raise any issue of fact indicative of . . . discriminatory conduct by the defendant." <u>Beard v. Annis</u>, 730 F.2d 741, 743-44 (11th Cir. 1984). <u>See</u> <u>Aquamina v. Eastern Airlines</u>, 644 F.2d 506, 508 (5th Cir. Unit B May 1981). Where, as here, the plaintiff does "nothing more than state his conclusion" that he was discriminated against because of his age, summary judgment for the employer is appropriate. <u>Locke v. Commercial Union Ins. Co.</u>, 676 F.2d 205, 206 (6th Cir. 1982).

### A.    Plaintiff's Age Discrimination Claim is Procedurally Barred

Plaintiff claims that he suffered intentional discrimination based on his age when Sysco terminated him after his involvement in a major accident. This Court need not address the merits of plaintiff's age claim under Federal or Alabama law, because the claim is procedurally barred by his failure to timely file this civil action and his failure exhaust administrative remedies through the EEOC.

### i.    Plaintiff Did Not Timely File His Age Claim

The EEOC issued Plaintiff's right-to-sue letter on March 29, 2005. Plaintiff did not initiate his lawsuit until June 29, 2005, more than 90 days after receiving

{B0669254}

the right to sue.  Therefore, this Court is without jurisdiction to consider Plaintiff's age claim.  See Jefferson v. H. K. Porter Co., (N.D. Ala. 1980) (A prerequisite to the maintenance of a Title VII action is the timely filing of the civil action within 90 days after receipt of the EEOC right-to-sue authorization … If the complaint is not filed within this period of time, the Court is without jurisdiction") *citing* 42 U.S.C. § 2000e-5(f).

Plaintiff's claim is also time barred under Alabama's Age Discrimination in Employment statute, Ala. Code 25-1-20, et. seq.  There are two options to filing an age discrimination claim under Alabama law.  The first option is to bypass the EEOC and file a cause of action within 180 days of the alleged discriminatory activity.  Byrd v. Dillard's Inc., 892 So.2d 342, 346 (Ala. 2004).  Plaintiff is time barred under this option because he was terminated on July 23, 2004 and did not file his cause of action until June 29, 2005, more than 180 days after the alleged discriminatory Act.   The second option is to first file a charge with the EEOC and receive a right-to-sue letter.  A Plaintiff who selects the second option is held to the same 90 day filing standard under the Federal Age Discrimination in Employment Act.  Id.  As demonstrated above, Plaintiff filed his cause of action more than 90 days after receiving his right-to-sue.  Thus, Plaintiff's state and federal age claims are time barred.

15

## ii.    Plaintiff's Did not Exhaust Administrative Remedies

Not only is Plaintiff's claim time barred, it is procedurally barred for failure to exhaust administrative remedies through cooperating with the EEOC and allowing that Agency to complete its investigation.  See  Forehand v. Florida State Hospital at Chattahoochee, 89 F.3d 1562, 1569 (11th Cir. 1996) ("the policy underlying EEOC regulations [is] … permitting the EEOC an opportunity to investigate and conciliate").  In Forehand, the plaintiff was found to have frustrated the EEOC's investigative process by not cooperating.  Because of the plaintiff's actions, the district court dismissed her claim for failing to exhaust administrative remedies, despite the fact that plaintiff had been issued a right-to-sue letter.  The 11th Circuit affirmed.  Id. at 1570.  This case is no different from Forehand.  The EEOC did not have an opportunity to complete its investigation because Plaintiff failed to cooperate.   Indeed, Sysco never had the opportunity to respond to Plaintiff's EEOC charge, which might have allowed the EEOC to find Plaintiff's claim unmeritorious.  See  Ward. V. Florida Dept. of Juvenile Justice, 194 F.Supp. 2d 1250, 1256 (N.D. Fla. 2002) ("A Title VII claimant must show a good faith participation in the administrative process.  As a general proposition, it is not good faith to fail to supply information when requested. … [A] complainant who fails to provide the agency with the information necessary to evaluate the merits of his or her complaint cannot be deemed to have exhausted administrative remedies")

16

(*citing* <u>Wade v. Secretary of the Army</u>, 796 F.2d 1369 (11th Cir. 1986)).  Plaintiff's

failure to exhaust his administrative remedies by cooperating with the EEOC bars

his age claim from consideration.

**B.    <u>Plaintiff's Discriminatory Discharge Claim Must Fail As A Matter Of Law</u>[1]**

**1.    <u>Plaintiff Cannot Prove Illegal Discrimination By Direct Evidence</u>**

An individual alleging violation of the ADEA must prove that his or her age

"actually played a role in the employer's decision-making process and had a

determinative influence on the outcome."  <u>Reeves</u>, 120 S.Ct. at 2105.  One way

that a plaintiff might attempt to make such a showing is with direct evidence of

discrimination, which is evidence that, if believed, proves the existence of a fact

without inference or presumption.  <u>Burrell v. Bd. of Trs. of Ga. Military Coll.</u>, 125

F.3d 1390, 1393 (11th Cir. 1997); <u>see</u> <u>also</u> <u>Castle v. Sangamo Weston, Inc.</u>, 837

F.2d 1550, 1558 (11th Cir. 1988).

To the extent that the plaintiff argues that supervisors at safety meetings

made small talk or joked with him about how long he had been at the company

constitute direct evidence of discrimination, he is incorrect.  The Eleventh Circuit

has repeatedly held that only the most blatant remarks, whose intent could mean

---

[1] The analysis for Alabama's age discrimination statute is identical to that of the Federal age discrimination statue.  <u>Dooley v. Autonation USA Corp.</u>, 218 F.Supp.2d 1270, 1277 (N.D. Ala. 2002).

{B0669254}

nothing other than to discriminate on the basis of some impermissible factor, constitutes direct evidence of discrimination.  Schoenfeld v. Babbitt, 138 F.3d 1257, 1266 (11th Cir. 1999); Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  Remarks by non-decision makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination.  Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1105 (11th Cir. 2001). Plaintiff's evidence that Dee Dunagan suggested that he investigate early retirement is not direct evidence, because Dunagan was not a decision maker, was not a supervisor at the time of Plaintiff's termination and the comment was made at least one year before Plaintiff was terminated.  Plaintiff's evidence that Parker and O'Connor joked with him or made small talk with him about how long he had been with the company is similarly not direct evidence of discrimination because they were not related to the decision making process.  Finally, Plaintiff's allegation that Morris would not allow him to schedule all of his vacation time at once, based on his seniority, is also not direct evidence of discrimination, especially where Morris was not involved in the termination process and had the desire to keep Plaintiff as a shuttle driver.

## 2.    **Plaintiff Cannot Prove Discrimination By Circumstantial Evidence Using The McDonnell Douglas Analysis**

If the plaintiff cannot prove discrimination by direct evidence, as in the case at bar, the establishment of an impermissible motive is governed by the

requirements for the allocation of burdens and order of proof set forth in McDonnell Douglas Corp. v. Green, 93 S.Ct 1817 (1973).  If a plaintiff relies upon circumstantial evidence, under the McDonnell Douglas analysis, he first has the burden of establishing a prima facie case of illegal discrimination.  See id. at 1824.[2]  If the plaintiff succeeds in establishing the prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection."  Id.  Finally, if the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the defendant was merely a pretext for discrimination.  See id. at 804; Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983).  At all times, however, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff."  Texas Dept. of Community Affairs v. Burdine, 101 S.Ct 1089, 1093 (1981).

### a)     Plaintiff Cannot Establish A Prima Facie Case Of Discrimination

The McDonnell Douglas test provides that, in order to establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must show: (1) he is a member of a class of persons protected by the ADEA; (2) he satisfactorily performed his job; (3) he was subject to an adverse employment

---

[2] Courts utilize the same basic prima facie elements for termination claims under Title VII and the ADEA. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998)(applying the McDonnell Douglas burdens analysis to ADEA cases).

19

action despite his satisfactory performance; and (4) after his termination, the employer filled the position with a person who was not a member of plaintiff's protected group. Holifield v. Reno, 115 F. 3d 1555 (11th Cir. 1997); Norrell v. Waste Away Group, Inc., 246 F. Supp. 2d 1213 (M.D. Ala. 2003).

Even though it is undisputed that plaintiff is a member of a protected class and that he suffered an adverse employment action via his termination, plaintiff nonetheless cannot establish a prima facie case of age discrimination. Plaintiff is also required to demonstrate that his performance was satisfactory and that he was replaced by a shuttle driver outside of his protected class. Plaintiff has admitted that his performance was unsatisfactory through inattentive driving and the Accident Review Committee determined that Plaintiff was careless. Plaintiff cannot reasonably argue that in wrecking a company vehicle and endangering the health and safety of others that he was performing his duties in a satisfactory manner. In addition, Plaintiff has presented no evidence that Sysco replaced him with a shuttle driver outside of his protected class. Without this evidence, Plaintiff cannot establish a prima facie case.

### (b)    Plaintiff Cannot Demonstrate That Sysco's Legitimate, Non-Discriminatory Reason For Terminating His Employment Was A Pretext For Discrimination

Even assuming, arguendo, that plaintiff has met his burden of proving a prima facie case of discrimination (which he has not), Sysco should nevertheless

{B0669254}

be awarded summary judgment. If the Court should conclude that, for purposes of this motion, the plaintiff has met his initial prima facie requirements, the burden shifts to Sysco to proffer a legitimate, non-discriminatory reason for why plaintiff was terminated. See McDonnell Douglas, 93 S.Ct 1824. Sysco's burden is one of production not persuasion.

As explained above, plaintiff was terminated for a legitimate, non-discriminatory reason – his involvement in a "major" accident as classified by the Accident Review Committee. As such, Sysco ended plaintiff's employment for reasons that were completely legitimate and non-discriminatory.

Since Sysco has articulated a legitimate, non-discriminatory reason for plaintiff's discharge, the burden returns to plaintiff to prove by a preponderance of the evidence that the stated reason is a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 804. Thus, the only remaining inquiry is whether the plaintiff has proven that the employer intentionally discriminated against him because of his age. Reeves, 120 S.Ct. at 2106. To prove discrimination at this stage, a plaintiff must show that the defendant's proffered reason is a mere pretext for discrimination. Id.

When making a showing of pretext, the plaintiff must point to concrete evidence in the form of specific facts discrediting the defendant's proffered reason for the employment decision at issue. Earley v. Champion Int'l Corp., 907 F.2d

21

1077, 1081 (11th Cir. 1990). Plaintiff may accomplish this by showing that the legitimate non-discriminatory reason should not be given credence, or that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reason. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996). Plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reason is a pretext for discrimination. Grigsby v. Reynolds Metal Co., 821 F.2d 590, 594 (11th Cir. 1987). Conclusory allegations of discrimination are not sufficient to raise an inference of pretext or intentional discrimination. Grigsby, 821 F.2d at 597. Moreover, a plaintiff's subjective personal belief that he suffered an adverse job action because of his age, rather than the employer's proffered reason, is not probative evidence of pretext. See Dodd v. Singer Co., 669 F.Supp. 1079, 1086 (N.D. Ga. 1987). A plaintiff cannot demonstrate pretext "by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence (over and above that of the prima facie case) of age discrimination." Fallis v. Kerr-McGee Corp., 944 F.2d 743, 747 (10th Cir. 1991). Moreover, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996). See Holifield, 115 F. 3d at 1565.

{B0669254}

### i.    Sysco's Reason For Terminating Plaintiff Is Not Unworthy Of Credence

Plaintiff has no evidence to show that Sysco's proffered reason for terminating his employment – his involvement in a major accident - is unworthy of credence.  As set forth above, it is undisputed that in every incident where the Accident Review Committee has declared an accident as "major," the employee has been terminated. Although Plaintiff now states that he does not remember whether he fell asleep and caused the accident, Plaintiff all but admitted that he was responsible by coming to an intersection that he was familiar with, having driven the same route four times a week for over four years, sooner than he expected and being unable to stop, causing his truck to slide into a ditch.  Plaintiff is simply not capable of showing that Sysco's legitimate, non-discriminatory reason for terminating his employment is unworthy of credence.  Moreover, Plaintiff has presented no evidence that he was terminated because of his age. Indeed, Plaintiff testified at his appeals hearing that he had no complaints about the retirement comments made by his previous supervisor and testified during his deposition that any other comments about how long he had been with the company consisted of small talk.  Plaintiff also testified that none of his supervisors ever made any derogatory comments towards an individual's age.

23

ii.    **Plaintiff Cannot Demonstrate That Similarly Situated Employees Received More Favorable Treatment**

Plaintiff is also unable to demonstrate pretext by showing that his age was the actual motivation behind Sysco's decision to discharge him. Of course, while evidence of disparate treatment may be sufficient evidence to demonstrate discrimination, it is axiomatic that the plaintiff must establish that Sysco treated similarly situated employees outside his classification more favorably than himself. Holifield, 115 F.3d at 1562. In order for an alleged comparator to be similarly situated, he must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). Plaintiff has not and cannot identify any similarly situated driver who was treated more favorably by Sysco after being involved in a "major" accident. Indeed, Sysco has produced substantial evidence that every individual involved in a "major" accident including the Plaintiff has been terminated.

iii.    **The Court Does Not Sit As A Super-Personnel Department**

Finally, it is well settled that courts are not in the business of adjudging whether employment decisions are prudent or fair. Instead, the sole concern for the courts is whether an unlawful discriminatory or retaliatory animus motivated the challenged employment decision. See B/E Aerospace, 376 F.3d at 1092;

{B0669254}

Cofield v. Goldkist, Inc. 267 F. 3d 1264 (11th Cir. 2001); Lee v. GTE Florida, Inc.,

226 F. 3d 1249 (11th Cir. 2001). In other words, "Federal Courts do not sit as a

super-personnel department that reexamines an entity's business decisions. Id.

On this point, it bears emphasizing that plaintiff cannot rely upon his

subjective beliefs or disagreement with Sysco's decisions to establish pretext.

Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). In Combs, an

African-American male sued his former employer, alleging termination based on

racial reasons, racial harassment, and failure to promote for racial reasons. Id. at

1525. After the plaintiff presented a *prima facie* case, the employer produced three

legitimate, nondiscriminatory reasons for its actions: (1) past experience; (2)

supervisory recommendations; and (3) supervisory experience of the plaintiff

compared to that of other employees. The plaintiff attempted to counter this

evidence by showing that the employer's proffered explanations were not

believable. Id. at 1539-1543.

The court rejected the plaintiff's contentions, holding that the plaintiff had

"failed to produce evidence sufficient to permit a reasonable juror to reject as

spurious [the employer's] explanation that it promoted [another employee] instead

of [the plaintiff]." Id. at 1543. According to the court, disagreement about an

employer's reason for an adverse employment decision is not at all the same thing

as disbelief about the existence of that reason. Id. "Reasonable people may

25

disagree . . . but such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision on [a legitimate, nondiscriminatory reason]." Id. at 1543 (emphasis in original).  The court additionally stated that business decisions are simply that and nothing more:

> [An employer's] decision . . . may seem to some to be a bad business judgment, and to others to be a good business judgment, but federal courts do not sit to second-guess the business judgment of employers.  Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.

Id. at 1543.  See also Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2004)("[W]e must be careful not to allow [discrimination] plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [plaintiff] was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one.").  Plaintiff has proffered no evidence to show that Sysco did not terminate him because of his involvement in a "major" accident.

WHEREFORE, PREMISES CONSIDERED, Sysco respectfully requests this Honorable Court to enter summary judgment and dismiss this case with prejudice.

{B0669254}

s/William D. Smith, Jr.
Arnold W. Umbach III (UMB002)
William D. Smith, Jr. (SMI204)
Attorneys for Defendant
Sysco Food Services
of Central Alabama, Inc.
STARNES & ATCHISON LLP
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, Alabama  35259-8512
(205) 868-6000
(205) 868-6099 Facsimile
tumbach@starneslaw.com
wsmith@starneslaw.com

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Davis L. Middlemas, Esq.
>1740 Oxmoor Road, Suite 210
>Birmingham, AL  35209
>
>Donald B. Kirkpatrick II
>Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C.
>100 Vestavia Parkway, Suite 200
>Birmingham, Alabama  35216

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

>None.

>s/William D. Smith, Jr.
>Arnold W. Umbach III (UMB002)
>William D. Smith, Jr. (SMI204)
>Attorneys for Defendant
>Sysco Food Services
>of Central Alabama, Inc.
>STARNES & ATCHISON LLP
>100 Brookwood Place, 7th Floor
>P. O. Box 598512
>Birmingham, Alabama  35259-8512
>(205) 868-6000
>(205) 868-6099 Facsimile
>tumbach@starneslaw.com
>wsmith@starneslaw.com

{B0669254}